UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAURESSA PEREZ, as Personal Representative of the ESTATE OF BRANDON PEREZ, Deceased *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD A. REITZ, II *et al.*, <br><br> Defendants. | CAUSE NO. 3:20-CV-946 DRL-MGG |

OPINION AND ORDER

A fatal truck accident occurred in summer 2020 that killed Brandon Perez and seriously injured his father and son. Richard Reitz was driving a tractor-trailer that struck the Perezes' vehicle. Brink Transfer Services, Inc. owned the tractor-trailer. The Perez estate filed a wrongful death action against the semi driver, Brink Transfer, and another company called Brink Farms, Inc.

Created in 1991, and based in Hamilton, Michigan, Brink Farms specializes in the transportation of non-hazardous bulk commodities and agricultural products, such as fertilizer and feed. It operates in several midwestern states. Brian and Shawn Brink both own the company after buying out their father who started the business. They both serve as the company's officers. The business has about 47 trucks and 62 employees.

In 2010, the Brink brothers started Brink Transfer. "Brothers don't always get along," so Brink Transfer provided Shawn an opportunity to operate and manage something different. Both men work for Brink Transfer. Based in New Buffalo, Michigan, the company hauls cement, slag, urea, and other construction materials. It owns its own truck and trailer fleet—essentially dry bulk trailers. The company employs twelve drivers.

Brink Transfer owned the tractor-trailer involved in the 2020 accident and ostensibly employed the driver (Richard Reitz). After the suit, the estate settled with Brink Transfer and Mr. Reitz. The estate argues that Brink Farms and Brink Transfer acted as alter egos such that the estate should be allowed to pierce the corporate veil and hold Brink Farms liable for the accident. That is the sole question presented by the motion today.[1] The court now grants summary judgment.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. The court must grant summary judgment when no such factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

---

[1] The estate originally sued Brink Farms for negligently entrusting the tractor-trailer to Mr. Reitz and for Mr. Reitz's actions as his employer under a *respondeat superior* theory, but the estate abandons these theories in response to the summary judgment motion. The court thus enters summary judgment on these theories and addresses the alter ego theory alone. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

2

DISCUSSION

    A.    *Summary Judgment Record.*

Brink Farms argues that certain materials offered by the estate cannot be considered. The company asks the court to disregard twenty exhibits [ECF 74-6, 74-11, 74-12, 74-14, 74-15, 74-16, 74-17, 74-18, 74-19, 74-20, 74-21, 74-22, 74-23, 74-24, 74-25, 74-26, 74-27, 74-28, 74-29, and 74-30] because the documents have not been authenticated, and four of these exhibits [ECF 74-17, 74-22, 74-24, and 74-25] because they constitute hearsay. These exhibits include bank, accountant, state, and loan records as well as documents relating to internal operations of these two companies, such as trucking logs, financial records, an employee handbook, and a job advertisement.

At summary judgment, the court may only consider admissible facts. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018). Affidavits must set out facts that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(4), and other documents may offer facts at summary judgment so long as the party can establish that these facts could be presented in a form that would be admissible, *see* Fed. R. Civ. P. 56(c)(1), (c)(2). The proper question for documents used at summary judgment is whether the facts within them could be rendered admissible, not whether a foundation has been laid already. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010) ("the form produced at summary judgment need not be admissible"); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (federal rules "allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form").

Rule 56 permits a "party [to] object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Brink Farms never explains why the twenty exhibits of concern could not be authenticated (through a custodial witness or other person with knowledge) and thus rendered admissible, and the company offers no specific reason to doubt their authenticity today. Merely saying that today they prove to be

3

unauthenticated doesn't meet Rule 56's standard for objecting. *See also 11 Moore's Federal Practice Civil* § 56.92 (2022) ("Based on the language of the amended rule, courts have held that evidence submitted in support of or opposition to summary judgment need not be authenticated."). At the same time, the estate has not followed best practice by tendering affidavits that would address authenticity after being challenged. *See Cehovic-Dixneuf*, 895 F.3d at 931-32. Still, the estate articulates a legitimate means by which these exhibits would be authenticated—quite easily for any trial lawyer—and Brink Farms actually relies on eleven of the twenty exhibits to which it objects.[2] Under these circumstances, the court sees no reason to disregard these exhibits, save for two.

First, one exhibit [ECF 74-25 or Ex. Y], which plays no role in today's decision, contains handwriting from an unknown source and otherwise lacks internal indicia to identify its origins. In addition, the estate seems to offer this for the truth of the matter asserted without any apparent exception under the evidence rules, *see* Fed. R. Evid. 801, 803, a layered concern when there is no context for its origins. The document vaguely says "[t]hey borrowed $100,000 from Brink Transfer." The estate offers this document to prove that "Brink Farms" borrowed $100,000 from Brink Transfer—so not just offers the document to prove the very truth of the statement, but with the rather glaring assumption that "they" means "Brink Farms," when the document otherwise refers to a number of other individuals and one other company dealing with the Brink businesses. The court thus disregards this document when the estate hasn't demonstrated how it could be rendered admissible.

Second, Brink Farms objects to a 2018 email exchange as hearsay [ECF 74-17 or Ex. Q]. The estate calls this email exchange "accounting documents" and claims that it shows "that Brink Farms enters into various transactions with related parties and affiliates." How it might do so is a mystery. Out of context, the email exchange is largely gobbledygook without indicia of trustworthiness on this

---

[2] The estate elected not to request leave to file a formal surreply, but it filed an opposition to the original motion to strike, which Brink Farms later withdrew as inconsistent with local rule. That said, the court has considered the estate's response to the motion to strike effectively as a surreply in addressing these objections.

4

point; and the estate offers nothing precise for designating this email as evidence in this motion, no reason to dispute its tender for the truth of the matter asserted, and no basis for how it might be rendered admissible nonetheless. The court won't scour for the reasons it has been offered or fashion an evidentiary basis for admissibility. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The court thus disregards this exhibit.

That leaves only two exhibits and a hearsay objection. These exhibits include loan documents from Macatawa Bank [74-22 or Ex. V], albeit unsigned, and a two-page loan documentation checklist from Fifth Third Bank [ECF 74-24 or Ex. X]. No one has objected that the loan documentation isn't accurate because it remains unsigned, or offers any reason to believe that the loan documentation isn't authentic. Accordingly, through bank custodians, the documentation could be authenticated and verified as business records (an exception to hearsay), thereby rendered admissible. *See* Fed. R. Evid. 803(6), 901(a). Under such circumstances, the court considers both exhibits today.

    B.    *Alter Ego Theory.*

Both sides advance Indiana law, and the court sees no reason to depart. The alter ego doctrine—a subset of piercing the corporate veil—holds one corporation liable for another corporation's actions when the one so organizes or controls the other's affairs as to use it as a mere instrumentality or adjunct, often with the goal of shielding itself from liability. *See Hipps v. Biglari Holdings, Inc.*, 136 N.E.3d 629, 638-639 (Ind. Ct. App. 2019). The alter ego doctrine permits a plaintiff to "show that two corporations are so closely connected that the plaintiff should be able to sue one for the actions of the other." *Id.* at 639.

The law is reluctant to disregard the corporate form, except to prevent fraud or unfairness. *See Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994). The law will disregard the fiction of two separate corporations and treat them as alter egos when "the facts establish [two] corporations are acting as the same entity." *Smith v. McLeod Distrib., Inc.*, 744 N.E.2d 459, 462 (Ind. Ct. App. 2000)

5

(quotations and citation omitted); *accord Konrad Motor & Welder Serv. v. Magnetech Indus. Servs.*, 973 N.E.2d 1158, 1165 (Ind. Ct. App. 2012). The purpose of the alter ego doctrine is "'to avoid the inequity that results when one corporation uses another corporation as a shield from liability.'" *Konrad Motor*, 973 N.E.2d at 1165 (quoting *Ziese & Sons Excavating, Inc. v. Boyer Const. Corp.*, 965 N.E.2d 713, 720 (Ind. Ct. App. 2012)).

The analysis proves factually intensive. A plaintiff must prove that the "corporate form was so ignored, controlled[,] or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). There are thus two prongs to the analysis, and "it is not enough merely to establish one prong of the test." *Country Contrs., Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 688 (Ind. Ct. App. 2014); *see Escobedo v. BHM Health Assocs.*, 818 N.E.2d 930, 934-35 (Ind. 2004) (emphasizing two prong test). No one "talismanic fact" will conclusively allow this piercing of the corporate veil; instead, the court must review the "entire relationship between various corporate entities." *Stacey-Rand, Inc. v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728 (Ind. Ct. App. 1988).

The law offers many factors to consider in deciding whether two corporations act as alter egos (prong one). "Factors indicating that a corporation is the alter ego of another may include the intermingling of business transactions, functions, property, employees, funds, records, and corporate names in dealing with the public." *Konrad Motor*, 973 N.E.2d at 1165 (citation omitted); *see also Aronson*, 644 N.E.2d at 867. The law expands these so-called *Aronson* factors[3] in the alter ego context to require the court to consider too whether "(1) similar corporate names were used; (2) the corporations shared

---

[3] Factors often rephrased when someone seeks to pierce the corporate veil to impose personal liability on a shareholder include "(1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice[,] or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Aronson*, 644 N.E.2d at 867.

common principal corporate officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards." *Konrad Motor*, 973 N.E.2d at 1165; *see also Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1192 (Ind. Ct. App. 2002); *Smith*, 744 N.E.2d at 463.

No one factor is dispositive; nor are all required. *Konrad Motor*, 973 N.E.2d at 1163. "[T]he alter ego relationship is a question of fact to be determined by the circumstances of each case." *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987). Even when a plaintiff fails to "present sufficient evidence relevant to the *Aronson* factors in support of its claim to pierce the corporate veil," one corporation may still be an alter ego of another. *See Oliver*, 769 N.E.2d at 1192; *see, e.g., Smith*, 744 N.E.2d at 464-65 (finding alter ego based largely on four additional factors).

This doesn't end the analysis. A plaintiff must also "establish a causal connection between the first and second prong of the test." *Country Contrs.*, 4 N.E.3d at 688. In other words, "the fraud or injustice alleged by a party seeking to pierce the corporate veil must be caused by, or result from, misuse of the corporate form" (prong two). *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1284 (Ind. Ct. App. 2012), *trans. denied*, 971 N.E.2d 669 (2012). Only when the corporations "disregard the separateness of [their] corporate identity and when that act of disregard causes the injustice or inequity or constitutes the fraud that the corporate veil may be pierced." *Id.* at 1284 n.2 (citation and emphasis omitted). The corporate form may not be disregarded merely to "promote substantial justice." *Escobedo*, 818 N.E.2d at 935. The evidence must show that the corporations "misuse[d] [] the corporate form to promote injustice." *Id.*; *see Country Contrs.*, 4 N.E.3d at 688; *Ziese*, 965 N.E.2d at 721 ("authority . . . to disregard corporate identity does not stem from the existence of a specific factual circumstance, but rather from the necessity of preventing fraud or unfairness to third parties").

After careful review of the record, the estate offers evidence that creates a triable issue whether these two corporations acted as alter egos (prong one), *see Winkler*, 638 N.E.2d at 1234; *Stacey-Rand*,

7

527 N.E.2d at 728, but not that the misuse of the corporate form caused an inequity or injustice (prong two), *see Escobedo*, 818 N.E.2d at 935; *Country Contrs.*, 4 N.E.3d at 688. After Brink Farms filed this summary judgment motion, the estate settled with Brink Transfer. Brink Farms argued in opening that Brink Transfer remained a fully operational and functioning company such that the two companies had not so manipulated or controlled each other as to cause an inequity or injustice. In fairness, Brink Farms argued this point more forcefully in its summary judgment reply after the estate and Brink Transfer settled their case, but that was its first opportunity to do so because the settlement occurred in the midst of summary judgment briefing.

The court won't consider a settlement for any improper purpose. *See* Fed. R. Evid. 408. Still, the burden of establishing a triable issue remains on the estate to counter the causation argument—namely, that a nexus existed between the acts of alter egos and the alleged inequity or injustice that the estate claims to exist. *See Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). The estate offers no evidence of an inequity or injustice, much less a causative link back to the alleged acts of a merged identity. The estate must establish that these acts of control or manipulation by the alter egos caused "the inequity that results when one corporation uses another corporation as a shield from liability." *Ziese*, 965 N.E.2d at 720; *accord Escobedo*, 818 N.E.2d at 935; *Oliver*, 769 N.E.2d at 1192. The estate merely says the injustice or inequity here is that it cannot fully collect on a judgment, but it never explains why that is so, and it never designates evidence to show that this is so. On this record, the estate merely would invite the jury to speculate whether an inequity or injustice has occurred, and how that was caused by their commingling of affairs. That cannot under the law create a triable issue. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) ("inferences relying on mere speculation or conjecture will not suffice").

The court would need to scour the record and slice it a different way, thereby making arguments for the estate, even to try to envision a case for this inequity or injustice, and for this

causative link back to the acts of these two corporations—neither in fairness to all parties its job. *See Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016); *Dunkel*, 927 F.2d at 956. Nothing on this record indicates that Brink Transfer has proven defunct, insolvent, or incapable of financing a settlement or judgment to make the estate whole. Nothing on this record indicates that Brink Farms erected or used Brink Transfer as a shield (or vice versa) to evade liability or that the estate would be inequitably foreclosed from recovery.

For instance, the same documents that the estate argues (for prong one only) as revealing undercapitalization show that in every instance [Ex. V, ECF 74-22; Ex. X, ECF 74-24], save for one [Ex. W, ECF 74-23],[4] Brink Farms acted as the borrower and Brink Transfer helped to collateralize or guarantee the loans, demonstrating financial wherewithal in Brink Transfer. No evidence shows that in doing so Brink Transfer was depleted of recoverable assets, or that the estate might face some other injustice because of Brink Transfer's decision to collateralize or guarantee the loans.

In arguing again only the first prong, the estate points to three large checks during the pendency of this lawsuit between December 2021 and January 2022—$50,923.04, $96,766.73, and $103,121.96—that went from Brink Farms to Brink Transfer. Nothing on this record shows that these transfers occurred merely to prop up an otherwise dying corporation or, for that matter, to cause some unjust result, including depriving Brink Farms of recoverable assets to render it judgment-proof.

Indeed, the estate offers no evidence to show these transactions served a nefarious or improper purpose, just an assumption. The two companies regularly transacted business—for administrative, repair, maintenance, and rental services—backed often by invoices and booked

---

[4] One commercial guaranty in the record flows the opposite direction and establishes Brink Farms as the guarantor of a loan to Brink Transfer, though the record never says for how much, why the loan was required, or why the bank requested the guaranty. A guaranty of one loan of an unknown amount for an unknown reason provides only marginal evidence of undercapitalization, not enough for a reasonable jury to conclude that today Brink Transfer remains incapable of making the estate whole or that some other inequity has resulted, much less answers the causation requirement.

transactions in accounting, thereby observing corporate formalities.[5] Brink Farms made other large payments, including amounts ranging from $35,000 to $138,000, to other businesses in 2021 too.

The estate offers no evidence that these three transactions between Brink Transfer and Brink Farms occurred outside the ordinary course of business, merely the specter of such. The estate says these transactions are questionable; though they may beg a question, on their face they don't alone provide an answer. The record falls short of giving a reasonable jury a basis, even a reasonable inference, to conclude that the businesses caused an inequity or injustice by commingling their affairs. The court has not been shown what the inequity or injustice is, much less one backed with designated evidence of its cause.

The estate filed a motion to seal evidence accompanying its response to summary judgment. The only grounds given for maintaining these documents under seal is that Brink Farms designated them confidential under the protective order. There is a strong presumption that information relied upon in a judicial decision will be available to the public, and a party seeking to maintain a document under seal must show good cause. *Cnty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 740 (7th Cir. 2007). Offering no additional reasoning, the estate didn't show good cause to keep these documents under seal. *See id.*; *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 713 (7th Cir. 2015), *overruled in part on other grounds*, *Universal Health Servs. v. United States*, 579 U.S. 176 (2016) ("[W]e [will] not seal documents . . . simply because the parties ha[ve] agreed to do so among themselves because that practice deprives the public of material information about the judicial process."). The court thus denies the motion. The exhibits the estate asks to seal are Brink Farms' records, so the court will entertain a renewed motion to seal, if appropriate.

---

[5] For example, they booked about 142 transactions together in 2020.

CONCLUSION

Accordingly, the court GRANTS Brink Farms' summary judgment motion [ECF 35], DENIES the estate's motion to seal documents with leave to either party to refile by October 6, 2022 [ECF 75], and GRANTS the motion to amend the complaint, thereby dismissing Brink Transfer Services, Inc. and Richard A. Reitz, II as defendants [ECF 87].[6] The court directs the clerk to make the sealed documents [ECF 76] public by October 10, 2022, absent further order of the court, and meanwhile to enter judgment for Brink Farms. This order terminates the case.

SO ORDERED.

September 29, 2022                                          *s/ Damon R. Leichty*
                                                            Judge, United States District Court

---

[6] Brink Farms filed a partial objection to the motion to amend; but, given the summary judgment ruling today, the concern seems moot.